IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALONZO MCCALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:10cv417-WHA |
| | )           (WO) |
| JOHN WILLIAMS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on Defendant John Williams' Motion for Partial Dismissal (Doc. #7), filed on July 15, 2010.

Plaintiff Alonzo McCall filed the Complaint in this case on May 12, 2010, alleging that Defendant Williams subjected him to excessive force through the use of a Taser gun, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

For reasons to be discussed, the Partial Motion to Dismiss is due to be GRANTED.

**II. MOTION TO DISMISS STANDARD**

The court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* _ U.S. _, 129 S.Ct. 1937, 1949-50 (2009). "[A] plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Id*. (citation omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

### III.  FACTS

The allegations of the Plaintiff's Complaint are as follows:

On May 17, 2008, Plaintiff Alonzo McCall ("McCall") was attending a baseball game at a ballpark in Lowndes County, Alabama. Around 4:30 p.m., McCall's cousin, Adam McCall, "had some words" with the boyfriend of his ex-wife at the ballpark. (Compl. ¶ 7, Doc. #1.) This confrontation prompted "Scooter" McQueen, who is believed to be a police officer in the adjoining town of Haynesville but who was not on duty at the ballpark, to escort McCall's cousin away from the area surrounding the baseball field and bleachers.

Seeing his cousin being escorted away, McCall left his seat on the bleachers and began walking toward his cousin and McQueen. By this time, Defendant John Williams ("Williams"), who was performing his duties as Deputy Sheriff of Lowndes County, had joined the discussion between McQueen and McCall's cousin.

At some point, Williams left the conversation between McQueen and McCall's cousin and walked toward the area where McCall was standing. When Williams was approximately 35 feet from McCall, McCall called to Williams and started to walk toward him. McCall asked Williams what was going on, and Williams responded that the incident involving McCall's

2

cousin did not concern McCall, and that McCall should return to his seat on the bleachers. McCall replied, "I just asked you a question." (Compl. ¶ 8, Doc. #1.) As McCall was returning to his seat, Williams chased McCall down and shot him in the back with a Taser gun. After being shot, McCall turned to face Williams and Williams then shot him in the chest with the Taser gun. McCall fell backward on the ground, and Williams fell on top of McCall. Williams then got up and walked off. McCall asked Williams if he could leave, and Williams said, "Yea, go ahead out of here." (Id.)

Several hours after the Taser-gun incident, McCall went to the emergency room, and the emergency room doctor determined that the chest pain of which McCall complained was non-cardiac in origin, and the doctor provided McCall prescription medication for the pain. McCall did not return for a follow-up appointment with the emergency room doctor or any other doctor after the incident.

### IV.  DISCUSSION

Defendant Williams argues that McCall's Fourteenth Amendment claim must be dismissed because the Fourth Amendment, rather than the Fourteenth Amendment, exclusively governs McCall's pre-arrest excessive-force claim. The court agrees.

"The first line of inquiry in analyzing a 42 U.S.C. § 1983 excessive-force claim is to identify the specific constitutional right allegedly infringed by the challenged application of force." *Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1270 (M.D. Ala. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). When a person, like McCall, is allegedly subjected to excessive force prior to a criminal conviction,[1] the claim is analyzed under either the Fourth or

---

[1] After a criminal conviction, excessive-force claims against law enforcement officers are governed by the Eighth Amendment to the United States Constitution. *See, e.g., United States v.*

3

Fourteenth Amendments, depending on the timing of the alleged constitutional violation.  In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held "that all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Id.* at 395.  The Supreme Court went on to state that the substantive due process rights of the Fourteenth Amendment do not attach until the moment of pretrial detention.  *Id.* at 395 n.10 (citing *Bell v. Wolfish*, 441 U.S. 520, 535-539 (1979)) ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.").

Applying the principles of *Graham* to this case, McCall's excessive-force claim must be analyzed under the Fourth Amendment, not the Fourteenth Amendment, because the alleged application of force occurred during a Fourth Amendment "seizure."  McCall alleges that Williams subjected him to pre-arrest excessive force when he shot McCall with a Taser gun multiple times.  In particular, McCall claims that Williams chased him, shot him in the back with a Taser gun, caught him, shot him in the chest with the Taser gun, and fell on him.  These allegations indicate that McCall was "seized" for Fourth Amendment purposes.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (citing *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)) (explaining that a Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied"); *Oliver v. Fiorino*, 586 F.3d 898, 901 (11th Cir. 2009) (analyzing excessive-force claim under

---

*Myers*, 972 F.2d 1566, 1571 (11th Cir. 1992) ("It is beyond cavil that the Eighth Amendment applies only after a prisoner is convicted.").

the Fourth Amendment that was based on the use of a Taser gun prior to arrest); *Carr v. Tatangelo*, 338 F.3d 1259, 1268-69 (11th Cir. 2003) ("Although [plaintiff] was not immediately stopped by the bullet from [defendant officer's] gun, he nevertheless was seized within the meaning of the Fourth Amendment when the bullet struck or contacted him."). Moreover, it is equally clear that McCall does not allege that he achieved the status of a pretrial detainee, the point at which due process rights of the Fourteenth Amendment would attach, especially considering that McCall alleges that an actual arrest never occurred. Because McCall claims that Williams used excessive force in the course of a "seizure" of McCall's person, McCall's claim must be governed by the Fourth Amendment and its "reasonableness" standard, and McCall's Fourteenth Amendment claim is due to be dismissed.

    McCall's contention that the Fourteenth Amendment could govern his excessive-force claim seems to be based on the idea that, because McCall was not arrested and was not searched, there was no Fourth Amendment "seizure." A person, however, does not have to be arrested in order to be seized under the Fourth Amendment. A person can be seized under the Fourth Amendment when a law enforcement officer terminates an individual's freedom of movement through means intentionally applied. *Lewis*, 523 U.S. at 844 (citing *Brower*, 489 U.S. at 596-97). Based on the allegations in the Complaint, the alleged application of excessive force occurred during a seizure of McCall's person, and thus, under *Graham*, the Fourth Amendment applies rather than the Fourteenth Amendment.

    The cases that McCall cites do not support his contention that the Fourteenth Amendment could apply to his claim. In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), a teenaged passenger on a fleeing motorcycle was killed following a police pursuit that ended

when the motorcycle crashed, and the defendant officer, after slamming on his brakes, skidded into the passenger, causing massive injuries and death.  *Id.* at 836-37.  The Supreme Court, before ultimately concluding that the deceased's claim was insufficient to state a substantive due process violation under the Fourteenth Amendment, first addressed whether the claim should be governed by the Fourth Amendment instead of the Fourteenth Amendment.  *Id.* at 841-42.  The Court held that the Fourth Amendment did not cover the deceased motorist's claim because the police chase that accidentally ended in the termination of the deceased's movement did not qualify as a Fourth Amendment "seizure," which occurs "only when there is a governmental termination of freedom of movement through means intentionally applied."  *Id.* at 844 (citing *Brower*, 489 U.S. at 596-97).  Here, unlike *Lewis*, the alleged facts indicate that a Fourth Amendment "seizure" occurred, as Williams allegedly intentionally terminated McCall's movement through use of the Taser gun.

In *T.W. v. School Board of Seminole County Fla.*, __ F.3d __ (11th Cir. 2010), 2010 WL 2572532 (11th Cir. June 29, 2010), the Eleventh Circuit addressed whether a teacher violated a disabled student's Fourteenth Amendment right to be free from excessive corporal punishment.  *Id.* at *1.  Because *T.W.* did not concern a claim of excessive force involving a law enforcement officer, the Eleventh Circuit did not address whether *Graham* would require the teacher-student corporal punishment claim to be analyzed under the Fourth Amendment instead of the Fourteenth.  Here, unlike *T.W.*, this case involves a claim that a law enforcement officer used excessive force during the course of a "seizure" of McCall's person.  A straightforward application of the holding in *Graham* requires that this claim be analyzed under the Fourth Amendment.

Finally, McCall is correct that the Eleventh Circuit has held that "a non-seizure Fourteenth Amendment substantive due process claim of excessive force survives *Graham*." *See, e.g., Wilson v. Northcutt*, 987 F.2d 719, 722 (11th Cir. 1993). But the facts as alleged in the Complaint clearly state that a Fourth Amendment "seizure" occurred, so the non-seizure Fourteenth Amendment cases are inapplicable.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

(1) The Motion for Partial Dismissal is GRANTED as to the Fourteenth Amendment claim, and that claim is DISMISSED with prejudice.

(2) This case will proceed on Plaintiff's Fourth Amendment claim.

Done this 20th day of August, 2010.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE